```
                UNITED STATES DISTRICT COURT
                EASTERN DIVISION OF KENTUCKY
                 CENTRAL DIVISION at LEXINGTON


LANCE DICKERSON,                )
                                )
     Plaintiff,                 )
                                )         Action No.
v.                              )         5:14-cv-39-JMH
                                )
CITY OF GEORGETOWN,             )    MEMORANDUM OPINION & ORDER
KENTUCKY                        )
                                )
     Defendant.
```

                              ***

This matter is before the Court upon Defendant City of Georgetown's Motion for Summary Judgment. [DE 17]. Plaintiff Lance Dickerson has filed a response, [DE 24], and Defendant has filed a reply. [DE 25]. The Court being otherwise sufficiently advised, the matter is now ripe for the Court's review.

**I. Background**

Plaintiff Lance Dickerson began his employment with the City of Georgetown as a police officer in September, 2008. He sustained a work-related injury in February, 2011, and filed a worker's compensation claim later that year that was ultimately settled. [DE 17-1 at ¶3; DE 24 at 1; DE 17-5 at 52; 108-10]. After that, Plaintiff was off work using sick, vacation, and FMLA leave until June, 2012. [DE 17-1 at ¶3; DE 24 at 1]. Plaintiff's return began the

period of his employ with Defendant that serves as the primary basis for this lawsuit.

Plaintiff received two reprimands[1] after his return to work in 2012. Between January and March of 2013, he was found asleep at work on two occasions and was a "no call-no show" on one occasion. [DE 71-1 at ¶ 4-5; DE 24 at 1-2; DE 1-3 at ¶ 30-35]. Then, on April 18, 2013, the police department received an anonymous complaint that Plaintiff was obtaining prescription medication beyond the time frame recommended by his physician. The department began an investigation and Plaintiff was placed on administrative leave with pay while the investigation was ongoing. [DE 17-1 at ¶ 7]. The investigation was subsequently closed, the department having concluded that although a large amount of opiates had been prescribed to Plaintiff and filled in a short period of time, there was no violation of law or department procedure. [DE 24 at 2; Georgetown Police Internal Investigation, DE 17-6 at 4].

---

[1] The parties appear to dispute what the basis for the reprimands were, but agree, at least, that there were two reprimands during this time. The Court takes this opportunity to note that both parties have failed to comply with the Court's scheduling order in their summaries of the facts of this case. [DE 6 at ¶ 8(c) and (d)]. Therefore, in accordance with the Court's scheduling order, [DE 6 at ¶ 8(g)], the Court presumes that the facts that each party has not responded to are not in dispute and also relies upon those facts supported by the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317 at 323 (1986).

Around April 30, 2013, Plaintiff reported to his employer that he had a seizure. [DE 17-1 at ¶ 8; DE 24 at 2]. Because of the seizure, Plaintiff was not allowed to drive for ninety days under Kentucky law. While unable to drive, he requested and was granted an accommodation and assigned to desk duty. Plaintiff was not allowed to wear a uniform and carry a weapon while in that position. [DE 17-1 at ¶ 8-11; DE 24 at 2].

On June 2, 2013, Plaintiff reported to a supervisor that someone had stolen his prescription medications. Later that month, the Office of Inspector General (OIG) of the Attorney's General Office began an investigation into an allegation it had received from a physician claiming Plaintiff had picked up overlapping prescriptions for a controlled substance. Plaintiff accused a pharmacy technician of stealing these medications, but the OIG concluded that Plaintiff had picked them up himself. [DE 17-1 at ¶ 16-18; DE 17-7]. In spite of this, no drug law was broken, and the investigation was closed with no further action from the OIG. [DE 17-7 at 9].

Then, on June 13, 2013, Plaintiff was observed, again, sleeping at his desk twice in one day. [DE 17-1 at ¶ 13]. Around this time, although it is unclear precisely when, Plaintiff requested and was granted leave under the FMLA to

3

address his anxiety. [DE 17-1 at ¶ 14; DE 24 at 2]. Also around this time, and while Plaintiff was on FMLA leave, the Chief of Police, Michael D. Bosse, ordered an internal investigation into Plaintiff sleeping on duty. [DE 17-6 at 6; DE 24 at 2]. The police department attempted to conduct an interview with Plaintiff relating to its investigation and was eventually able to serve him with a 48-hour notice for an administrative interview on August 14, 2013. Plaintiff did not attend the interview. [DE 17-1 at ¶19-21; DE 24 at 2]. Also, during the course of the investigation, on June 18th, 2013, Plaintiff filed a grievance with the department alleging disability, harassment, and discrimination. [DE 17-5 at 84].

Disciplinary charges against Plaintiff were prepared on August 28, 2013, and served on Plaintiff through his counsel on September 11, 2013, notifying Plaintiff that a termination hearing would be held September 17, 2013. [DE 17-1 at ¶ 22-23; DE 24 at 2]. Plaintiff did not attend the hearing on the 17th, although the reasons for his non-attendance are in dispute. However, his attorney did appear and asked for a continuance. [DE 17-5 at 128-30]. His request was denied, and Plaintiff's employment was terminated effective September 30, 2013. [DE 17-1 at ¶ 24-25; DE 24 at 2-3].

4

**II. Standard of Review**

A motion for summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Analysis**

   **A. Kentucky Civil Rights Act Claims**

Plaintiff alleges disability discrimination and retaliation in violation of the Kentucky Civil Rights Act, KRS §§ 344.040, 344.280. The Kentucky Supreme Court has interpreted the Act "consistent with the applicable federal anti-discrimination laws" and applies the familiar *McDonnell Douglas* burden-shifting test in cases such as this, in which the plaintiff has failed to provide direct

5

evidence of discrimination. *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).

Under the burden-shifting framework, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. If he is successful, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory explanation for its employment decision. *Id*. Once the defendant offers its explanation, the burden shifts back to Plaintiff to show that the defendant's explanation was mere pretext for discrimination. *Id*. at 804.

### 1. Disability Discrimination

Defendant argues that Plaintiff has not met his burden of establishing a prima facie case of disability discrimination, nor has he established that Defendant's legitimate, non-discriminatory reasons for his termination are pretext.

To establish a prima facie case, Plaintiff must show "(1) that he had a disability ...(2) that he was 'otherwise qualified' to perform the requirements of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision...." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706-07 (Ky. Ct. App.

6

2004). Although Defendant argues Plaintiff was not qualified for the job because he was unable to drive, it is clear and undisputed that with reasonable accommodation (assignment to desk duty) Plaintiff's inability to drive did not leave him unqualified for that position. Rather, the relevant issue at this prima facie stage is whether Plaintiff established that he has a disability under the first prong. On the record before the Court, he has not.

The KCRA defines disability as "(a) A physical or mental impairment that substantially limits one or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment." KRS § 344.010(4).[2] Plaintiff argues that he is both actually disabled and was regarded as disabled by Defendant. However, although Plaintiff has listed his impairments, he has made no attempt to explain how said

---

[2] Kentucky courts often look to federal courts' analysis of disability discrimination claims, see *Hallahan*, 138 S.W.3d at 706-08. This is because the language of the KCRA tracks that of the ADA before it was amended by the Americans with Disabilities Act Amendment Act ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, effective January 1, 2009, which broadened the definition of "disability." The relevant conduct in this case occurred after the amendments took effect in 2009. So, if Plaintiff had made a federal disability claim, it would be analyzed with the amendments in mind. See *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009). However, Plaintiff's claim is a state law claim and Kentucky courts have not yet addressed how the amendments to the ADA affect a KCRA disability discrimination analysis, nor has the Kentucky legislature amended the KCRA as Congress did to broaden the scope of what is meant by disability. Accordingly, the Court will construe Plaintiff's state law claims based on the analysis still used by Kentucky courts, which use the approach taken by federal courts *before* the amendments took effect.

7

impairments substantially limit his major life activities. Additionally, the only evidence of Plaintiff's disability is his deposition testimony. He has provided no record of medical treatment or diagnosis. Without such records, the Court cannot attempt to discern to what extent, if any, his impairments limit the activities of his daily life. Thus, the Court finds that Plaintiff has failed to show that he is actually disabled.

Similarly, Plaintiff has not established that he was "regarded as" disabled. He argues that Defendant perceived him as disabled because he was assigned to desk duty and not allowed to wear a police uniform while on that assignment. However, in order to show he was "regarded as" disabled, Plaintiff must show that Defendant "mistakenly believes that [Plaintiff] has a physical impairment that substantially limits one or more major life activities, or (2) ... mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Hallahan*, 138 S.W.3d at 707. When analyzing whether an impairment is substantially limiting, "the impairment's impact must also be permanent or long term." *Id*. at 71 (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 at 198 (2002), *overturned due to legislative action amending the ADA* (2009)). Given that

8

Plaintiff was the one who requested the accommodation, and that it occurred in conjunction with Plaintiff not being able to drive for only ninety days, Plaintiff has not established how his assignment to desk duty shows that Defendant perceived him as "substantially limited" permanently or long term. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 594 (Ky. 2003) (holding plaintiff could not establish regarded as prong where there was no evidence from which a jury could make inferences about his employer's belief that plaintiff could not perform a "broad class of jobs" or "tasks central to [his] daily life.").

Regardless, even assuming Plaintiff can establish a prima facie case, Defendant has provided legitimate, non-discriminatory reasons for terminating Plaintiff's position and Plaintiff has not established that these reasons are pretext for discrimination. Defendant avers that it terminated Plaintiff's position because he was sleeping on duty on several occasions and for misconduct relating to prescription medications. This is supported by the charging documents filed in the record. [DE 17-8]. The Court finds both reasons to be legitimate and non-discriminatory. *Cf. Cartwright v. Lockheed Martin Util. Servs., Inc.*, 40 F. App'x 147, 155 (6th Cir. 2002) (holding that sleeping on duty is a legitimate, non-discriminatory reason for

9

discharge); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (holding allegations of misconduct, poor job performance, and failure to follow procedure were legitimate, non-race based reasons for discharge).

It is clearly established that once the employer provides a legitimate, non-discriminatory reason for the termination, a plaintiff must show that reason is pretext, or, in other words, "produce sufficient evidence from which the jury [could] reasonably reject the employer's explanation." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 497 (Ky. 2005) (citing *Manzer v. Diamond Shamrock Chems., Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994)). Yet, Plaintiff has made no attempt whatsoever to establish the pretext element of his disability discrimination claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted).

Moreover, the Court finds no evidence that Defendant's reasons were pretext for discrimination. *See Manzer,* 29 F.3d at 1083 (discussing three methods for establishing

10

pretext). Evidence of Plaintiff's misconduct concerning prescription medications is supported by the detailed investigation of a separate, independent agency, the OIG, [DE 17-7], and there is no evidence on the record to rebut it. Nor does the proffered reason of sleeping while on duty appear to have a discriminatory undercurrent. Although Plaintiff has later stated, notably without support from medical records, that he was diagnosed with narcolepsy and that his sleeping was uncontrollable, Plaintiff has offered no evidence that Defendant knew his sleeping was the result of a medical condition rather than simple sleepiness. *See Wright*, 455 F.3d at 708 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799 at 806-07 (6th Cir. 1998)) (holding that an employer may rebut a claim of pretext by showing its "reasonable reliance on the particularized facts that were before it at the time the decision was made," which the employee may then rebut).

Plaintiff has failed to establish pretext, an element on which he will bear the burden at trial. *Celotex*, 477 U.S. at 322-23. Accordingly, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim.


### 2. Retaliation

Plaintiff's Complaint alleges he was retaliated against in violation of the Kentucky Civil Rights Act, KRS § 344.280, for filing grievances alleging he was the victim of harassment and discrimination.

To make out a prima facie case of retaliation a plaintiff must show that (1) he engaged in a protected activity, (2) his employer knew that he had engaged in said activity, (3) his employer took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004).

Plaintiff has made no attempt to establish a prima facie case of retaliation under the KCRA. What's more, even if Plaintiff could establish a prima facie case, he has also failed to identify evidence of pretext in light of Defendant's legitimate, non-discriminatory reasons for Plaintiff's termination. *See McPherson*, 125 F.3d at 995-96; [DE 24]. This is Plaintiff's burden at trial and he has not met it. *Celotex*, 477 U.S. at 322-23. Accordingly, Defendant is entitled to summary judgment on this claim.

### B. Retaliation Under the Kentucky Worker's Compensation Statute

Plaintiff also alleges he was retaliated against in violation of KRS § 342.197 for filing a worker's compensation claim. [DE 1-3 at 9]. Kentucky courts also employ the *McDonnell Douglas* burden-shifting analysis discussed above for such claims and Plaintiff's prima facie case is the same as it is for retaliation claims under the KCRA as articulated in the previous section. *See Bihl v. Griffin Indus.*, 2010 WL 3191783, at *3 (Ky. Ct. App. Aug. 13, 2010) (citing *Brooks,* 132 S.W.3d 790).

The parties do not dispute that Plaintiff can establish the first and second prongs of the prima facie case. Rather, the dispute centers on the third and fourth prongs. Plaintiff contends that after he filed the worker's compensation claim, he was wrongfully accused of misconduct relating to prescription medications and put on leave, assigned to desk duty, and terminated from his position.

"A material modification in duties and loss of prestige may rise to the level of adverse action." *Brooks,* 132 S.W.3d at 803 (citing *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 886-87 (6th Cir. 1996)). Here, the prescription medication investigation does not rise to the level of an adverse action because Plaintiff was placed on

13

leave with pay while it took place and because it appeared to conclude relatively quickly with little to no impact on the Plaintiff's job. However, Plaintiff's assignment to desk duty, even though he requested it, where he was not allowed to wear the police officer's uniform, may constitute a "lose of prestige" sufficient to conclude that it was an adverse employment action. And, certainly, Plaintiff's ultimate termination constitutes an adverse employment action.

Regardless, Defendant contends that Plaintiff cannot satisfy the fourth prong to establish a causal connection between the adverse actions and the filing of the worker's compensation claim, and the Court agrees. Both of the identified adverse employment actions, assignment to desk duty and Plaintiff's termination, occurred two years after Plaintiff filed his worker's compensation claim. This length of time is not the "close temporal relationship" between the filing of the claim and the adverse actions that Kentucky courts have found to establish a causal connection in the past. *See Brooks*, 132 S.W.3d at 804.

Accordingly, the Court finds that Plaintiff cannot establish a prima facie case of worker's compensation retaliation. Notably, Plaintiff also fails to make any pretextual argument to overcome Defendant's proffered

14

reasons for terminating Plaintiff. For these reasons, Defendant is also entitled to summary judgment on Plaintiff's worker's compensation retaliation claim under KRS § 342.197.

**C. Retaliation under the FMLA**

Plaintiff also brings a retaliation claim under the Family Medical Leave Act, 29 U.S.C. § 2601. Courts employ the same *McDonnell Douglas* burden-shifting analysis discussed above to FMLA retaliation claims, and the plaintiff has the same burden at the prima facie stage as in other retaliation cases, noted above. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 432-33 (6th Cir. 2014).

Plaintiff's Complaint cites as the basis for this claim that he was terminated on September 30, 2013, while he was on approved FMLA leave. [DE 1-3 at 10]. Defendant argues again that Plaintiff cannot establish the fourth prong of the prima facie case; the causal connection between his taking FMLA leave and his termination, because there is nothing in the FMLA to prevent an employer from terminating his employee's position while that employee is on leave, only that an employer may not fire his employee *because* the employee has taken FMLA leave. However, here, Plaintiff took FMLA leave around the same time that

15

Defendant began investigating him and Plaintiff was fired two months later, in part as a result of that investigation. This close temporal proximity between the leave and the termination is enough to permit an inference of retaliation and satisfy the fourth prong. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283-84 (6th Cir. 2012).

Regardless, Defendant has articulated two legitimate, non-discriminatory reasons for Plaintiff's termination: prescription medication misconduct and sleeping on duty. Plaintiff simply states, "the Defendant's reasons are pretext," but again offers no argument refuting Defendant's legitimate reasons. *See McPherson*, 125 F.3d at 995-96. Plaintiff has the burden at trial to show pretext and he has failed to meet it. *Celotex*, 477 U.S. at 322-23. Accordingly, Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

**D. Due Process**

Next, Plaintiff claims he has been denied due process guaranteed by KRS § 15.520 when Defendant arbitrarily terminated his position. As a police officer, Plaintiff is entitled to the due process protections provided by KRS § 15.520. *See Howard v. City of Independence*, 199 S.W.3d 741, 743 (Ky. Ct. App. 2005). Defendant argues that Plaintiff

16

received all rights he was due under that statute, in particular, Plaintiff was given proper notice of the charges against him and the date and time of the hearing set to address said charges, and had an attorney representing him. Plaintiff does not deny that he received proper notice of the hearing and acknowledges that he had time to obtain counsel, and the Court agrees that Plaintiff was properly notified and represented by counsel to meet the requirements of the statute. *See* KRS § 15.520(c)-(e).

Rather, Plaintiff argues that his due process was denied when, on the day of the hearing, his counsel's request for a continuance was denied and the hearing proceeded without Plaintiff or his counsel present. Yet KRS § 15.520 does not entitle Plaintiff to a continuance whenever he wishes. Plaintiff states in his response that "he was unable to attend his hearing due to being off work from his approved FMLA leave." [DE 24 at 7]. However, there is also no requirement in KRS § 15.520 that the hearing be held when the officer has returned to duty, nor any prohibition against the hearing being held while the officer is on leave. Plaintiff also stated at his deposition that he had been hospitalized on the day of the hearing as his reason for nonattendance, a fact that Defendant disputes. [DE 17-5 at 127-29; DE 25 at n.6].

17

Regardless, Plaintiff also conceded that Defendant had no knowledge of his hospitalization when it denied the request to continue the hearing. [DE 17-5 at 129]. It appears that Plaintiff did, indeed, receive all the process he was due under KRS § 15.520. Accordingly, Defendant is entitled to summary judgment on this due process claim.

**IV. Conclusion**

For all the reasons set forth above, Plaintiff's claims fail as a matter of law and shall be dismissed. Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, [DE 17], is **GRANTED**.

This the 20th day of May, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

18